**Wayne Carl NICOLAISON,
Petitioner, Appellant,**

**v.**

**Robert A. ERICKSON, Warden,
Minnesota Correctional
Facility, Respondent.**

No. CX–87–1826.

Court of Appeals of Minnesota.

July 5, 1988.

Review Denied Aug. 24, 1988.

Wayne Carl Nicolaison, Stillwater, pro se.

Hubert H. Humphrey, III, Atty. Gen., Richard L. Varco, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and FORSBERG, JJ., without oral argument.

## OPINION

WOZNIAK, Chief Judge.

This appeal is from an order denying appellant Wayne Nicolaison's petition for a writ of habeas corpus following an evidentiary hearing. We affirm.

## FACTS

Appellant Wayne Nicolaison was committed to the Commissioner of Corrections on February 5, 1985 for a first degree criminal sexual conduct sentence. On March 28, 1985, the Program Review Team (PRT) at

the Minnesota Correctional Facility–Stillwater (MCF–STW) reviewed his case and determined that, as a repeat sex offender, he should be assigned to the General Treatment Unit (GTU) at Oak Park Heights for completion of that treatment program. Nicolaison was transferred to Oak Park Heights on April 1, 1985, but failed to enter the program.

On January 21, 1987, Nicolaison was returned to Stillwater and, contrary to policy, assigned to an incentive job (one paying above the minimum wage). On March 27, 1987, he was terminated from that job when it was discovered he had not completed his assigned treatment, as required by MCF–STW Policy E–5. Nicolaison sent a "kite" inquiring about his termination, and Warden Erickson replied, citing the 1985 Program Review:

> You were transferred to Oak Park Heights, refused to enter the Treatment Unit, received misconduct reports for Inappropriate Sexual Behavior, and returned to this facility.

> You are not being treated unjustly. You do not qualify for incentive assignment.

At the hearing, Nicolaison argued he had a protected interest in incentive employment and his failure to participate in a voluntary treatment program could not affect his eligibility for incentive employment. At his request, the department's counsel appeared and produced Nicolaison's discipline record. Nicolaison produced records of two other inmates who had also been denied incentive jobs for failure to complete treatment. The trial court denied the petition, finding the department's policy of requiring an inmate to complete assigned treatment before obtaining an incentive job was not contrary to statute and did not deprive Nicolaison of a liberty interest.

## ISSUES

1. Did the trial court err in denying the habeas corpus petition?

2. Is habeas corpus relief appropriate for appellant's claim?

## ANALYSIS

1. Nicolaison contends the Department of Corrections could not deny him an incentive job based on his failure to complete treatment which, by statute and administrative rule, is voluntary.

Minn.Stat. § 244.03 (1986) provides, in part:

> The commissioner shall provide appropriate mental health programs and vocational and educational programs with employment-related goals for inmates who desire to voluntarily participate in such programs.

The department's regulations reinforce the voluntary nature of treatment programs.

> Each correctional facility shall ensure that inmates have a right to refuse to participate in any program except that inmates must accept work assignments, enrollment in basic education programs, medical and dental care mandated by statute, and participation in other programs ordered by the sentencing court or required by statute.

Department of Corrections Policy 3–179.2 (June 1985).

The policy at issue here provides:

> When an inmate has been mandated for treatment either for program conditions of incarceration or residential conditions of release by the Program Review Team, he will not be eligible for incentive pay assignments until the treatment is received. The only exception to this is if there is a long waiting list for the treatment or if treatment would be more beneficial toward the end of the period of incarceration. In that case the inmate will be allowed to take an incentive pay job. If he does not enter treatment when his name comes up or fails to apply for entrance into a treatment program in a timely manner to assure enough time to complete the program, he will be terminated from the incentive pay job. He will not be eligible to re-enter an incentive pay job until the treatment is successfully completed.

MCF–STW Policy E–5 at 9.

 The Constitution does not create a property or liberty interest in prison em-

ployment. *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir.1986). State statutes or administrative regulations may create such an interest. *Id.* at 597; *Peck v. Hoff*, 660 F.2d 371, 373 (8th Cir.1981) (South Dakota statutes did not create a right to trustee status or work in prison industry shops). The MCF–STW policy does establish a scheme of eligibility lists for employment vacancies, probationary periods, and written notice and appeal of dismissals. The regulations, however, must be read in light of the qualifications established for employment. One of the guidelines established for inmate assignment is "direction from the Program Review Team." MCF–STW Policy E–5 at 3. The PRT here had assigned Nicolaison to the treatment program at Oak Park Heights. The MCF–STW policy did not create a protectable liberty or property interest in an incentive job assignment.

Nicolaison's argument that the department violates the statute and makes treatment mandatory by providing an incentive to complete treatment is without merit. As respondent points out, Nicolaison had a right to refuse to enter treatment, but is not entitled to be free of adverse consequences from that decision.

The use of premium work assignments as an incentive for treatment is a matter of prison administration. *See State v. Burdick*, 355 N.W.2d 176, 178 (Minn.Ct.App. 1984) (Commissioner of Corrections, not the trial court, has authority to prescribe rules and conditions of incarceration). The Supreme Court has listed a number of areas traditionally left to the responsibility of prison administrators, including the problems of "rehabilitating * * * the inmates placed in [prison administrators'] custody." *Procunier v. Martinez*, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). Although Minn.Stat. § 244.03 limits the department's authority to require participation in rehabilitative programs, it does not prevent the use of incentives to encourage inmate participation.

The supreme court has held that even those prison regulations impinging on inmates' constitutional rights are valid if "reasonably related to legitimate penological interests." *Turner v. Safley*, —— U.S. ——, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Rehabilitation is such a legitimate interest. Minn.R. 2940.0800, subpt. 2 (1987) provides:

> The needs assessment must specify the inmate's needs as identified by the program review committee regarding chemical dependency, sexual deviancy, psychological disorder, and other.

> The projected release plan shall be based on the inmate's needs and shall contain the conditions required to meet the department's objective of public protection.

We believe the legislature, in providing for the voluntary nature of in-prison treatment programs, did not intend to prohibit incentives for treatment which is ultimately for the protection of the public.

Nicolaison has presented a 1980 memo from the attorney general's office concluding that under the guidelines and Minn. Stat. § 244.03, participation in treatment can have no effect on eligibility for supervised release. Supervised release, however, is a statutorily-defined term affecting the length of confinement. This is easily distinguishable from in-prison employment, an "incentive" for treatment.

2. As discussed above, Nicolaison's petition presents at best a claim that respondent's policy violated the statute. Although Nicolaison claims a liberty interest entitling him to due process, he does not allege a violation of procedural due process.

The supreme court has not decided whether habeas corpus is available to challenge the denial of statutory protections. *State ex rel. Crosby v. Wood*, 265 N.W.2d 638, 639 (Minn.1978). However, we question whether habeas corpus is available to challenge matters as essential to prison administration as treatment program incentives.

## DECISION

The trial court did not err in finding Nicolaison's termination from in-prison em-

ployment did not violate his statutory or constitutional rights.

Affirmed.